**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2635
_____

ALEX CHANDRA TAN,
                                Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A088-646-878)
Immigration Judge: Philip Verrillo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 26, 2014

Before:  HARDIMAN, NYGAARD and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  June 13, 2014)
_____

OPINION
_____

PER CURIAM

Alex Chandra Tan ("Tan") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will deny the petition for

review.

Tan, an ethnic Chinese Christian native of Indonesia, entered the United States on April 24, 2003 as a nonimmigrant visitor and overstayed his visa. In February, 2008, the Department of Homeland Security commenced removal proceedings against him through the filing of a Notice to Appear in Immigration Court, which alleged that he was removable pursuant to Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States for a time longer than permitted. It is undisputed that Tan is removable as charged. Tan applied for statutory withholding of removal, INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), claiming that he was persecuted on the basis of his ethnicity in Indonesia and would be again if forced to return there.

Tan testified at his hearing about several incidents of brutality perpetrated on him and his family by native Muslims when he was a child and teenager. Those incidents occurred in 1985, 1990, and 1995. In 2003, Tan's wife's uncle was robbed. As a result of these incidents Tan claimed that he has suffered both physically and emotionally. In support of his claim of persecution, Tan submitted numerous supporting documents, including a letter from Matthew Clark, M.D. indicating that the scars on Tan's legs and head are consistent with injuries sustained in the manner he described; a letter from Lawrence B. Egbert, M.D. indicating that Tan exhibits symptoms consistent with post-traumatic stress disorder; a letter confirming his membership in a Christian church in Philadelphia; several newspaper articles regarding conditions in Indonesia; an affidavit from Dr. Jeffrey A. Winters, a professor with expertise in the area of Southeast Asia and Indonesia, stating his opinion on conditions in Indonesia for the ethnic Chinese

2

community and religious minorities; and the State Department's 2009 Country Report for Indonesia and 2009 International Religious Freedom Report for Indonesia.

On October 21, 2010, the Immigration Judge denied Tan's application for withholding of removal. The IJ found Tan's testimony to be credible and noted that his experiences in Indonesia could rise to the level of past persecution on account of a protected ground. Nevertheless, the Government had successfully rebutted any presumption of a future threat to his life or freedom. The IJ noted the State Department reports for Indonesia in the record, and concluded that they did not demonstrate a systematic, pervasive or organized persecution of the ethnic Chinese community in Indonesia. Rather, these reports noted efforts by the Indonesian Government to stop interreligious violence, a constitutional provision providing the right for all persons to worship according to their beliefs, and Indonesia's official recognition of six faiths including Protestantism and Catholicism. Also, the record evidence did not show that Tan would be singled out for harm upon his return.

The IJ pointed out that he had considered the other background materials submitted by Tan, particularly the affidavit of Dr. Winters. The IJ did not agree with Dr. Winters' assessment that current conditions in Indonesia supported Tan's claim of a future threat to his life or freedom. In addition, the IJ observed that the last physical attack on Tan occurred long ago, that Tan lived in Indonesia from August, 1990 through April, 2003 without suffering any additional physical attacks, and that his three siblings and mother reside in Indonesia and have not been harmed.

Tan appealed to the Board of Immigration Appeals. On May 28, 2013, the Board dismissed the appeal. The Board agreed with the IJ that, even assuming that Tan had established past persecution, the presumption of future harm had been rebutted by the Government and the record evidence of current conditions in Indonesia. The Board additionally held that Tan had not demonstrated that he would be singled out individually for persecution upon his return to Indonesia, pointing out that he "remained in Indonesia for approximately 13 years after the church bus incident in 1995 and he and his future wife were not harmed at the hardware store in 2003." A.R. 4. To the extent that the IJ appeared to have cited the wrong date in association with Tan's description of a particular incident of harm, the Board found this error to be harmless. The Board also observed that Tan's three siblings and mother all continue to live in Indonesia and have not been harmed since his departure in 2003. Last, the Board agreed with the IJ that Tan had not established a systematic, pervasive or organized pattern or practice of persecution of ethnic Chinese Christians in Indonesia.

Tan has timely petitioned for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). In his brief, Tan contends that the Board's determination that it is not more likely than not that he would be persecuted in the future is unsupported by substantial evidence. Specifically, Tan argues that he did not receive a sufficiently individualized assessment of his evidence of current country conditions. Petitioner's Brief, at 13. In particular, the Board failed to even mention Dr. Winters' expert opinion that there is a real and ongoing danger of violent attacks against the ethnic

4

Chinese community in Indonesia. See id. at 25-26.[1] Tan seeks a remand for further analysis. See id. at 14.

We will deny the petition for review. When the Board issues a separate opinion, we review the Board's decision and look to the IJ's ruling only insofar as the Board deferred to it. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Here, the Board summarized the IJ's decision by specifically citing to it, and gave every indication that it was deferring to it. To overturn the Board's decision, Tan must show us that his evidence was "so compelling that no reasonable factfinder could fail to find" in his favor. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), withholding of removal is not discretionary: "The Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." Id. The applicant must establish by a "clear probability" that his life or freedom would be threatened in the proposed country. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407, 429 (1984). Clear probability is defined to mean that it is more likely than not that an alien would be subject to persecution. See id. at 429-30. It is the applicant's burden to prove his case. 8 U.S.C. § 1231(b)(3)(C).

---

[1] Tan also contended that the agency applied the wrong standard, but we are confident that the agency applied the correct withholding of removal legal standard in Tan's case.

In claiming a well-founded fear of persecution, the applicant must show that (1) he would be individually singled out for persecution or that (2) there is a pattern or practice of persecution of similarly situated individuals. Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). If the applicant proves that he has suffered past persecution, "it shall be presumed that the applicant's life or freedom would be threatened in the future . . ." 8 C.F.R. § 1208.16(b)(1)(i). The Government may rebut this presumption by showing through a preponderance of the evidence a "fundamental change in circumstances" such that the applicant's life or freedom would not be threatened, see id. at § 1208.16(b)(1)(i)(A). As with any claim of persecution, the acts constituting persecution must be committed by the government or forces the government is either unable or unwilling to control. See Garcia v. Att'y Gen. of U.S., 665 F.3d 496, 505 (3d Cir. 2013).

Substantial evidence supports the agency's conclusion that the Government rebutted the presumption of any future threat to Tan's life or freedom. As noted by the IJ, and affirmed by the Board, the State Department reports from 2009 do not support a claim that Tan's life or freedom would be threatened in Indonesia. Overall, these reports demonstrate much better conditions in Indonesia since Tan was last harmed. The 2009 State Department reports reflect governmental efforts to stop interreligious violence, and thus show that the Indonesian government does not condone or acquiesce in attacks by private actors. Moreover, we have held that the agency may rely on State Department reports. See Zubeda v. Ashcroft, 333 F.3d 463, 477-78 (3d Cir. 2003) (State Department country reports are most appropriate and perhaps best resource for information on political situations in foreign nations).

Tan's contention that the agency's analysis of his evidence was not sufficiently particularized is based in part on Berishaj v. Ashcroft, 378 F.3d 314, 327 (3d Cir. 2004), where we held that generalized improvements in country conditions would not suffice to rebut credible testimony and other evidence supporting the specific basis for the alien's fear of persecution. Berishaj is inapposite here because Tan's claim, unlike the alien's in Berishaj, is based generally on his Chinese appearance and his practice of Christianity; nothing in the record here indicates that Tan has been or will be subjected to harm based on a characteristic or action specific to him.

Moreover, we are satisfied that the agency, and specifically the Board, properly considered Tan's evidence, including Dr. Winters' affidavit, in concluding that the Government rebutted the presumption that Tan's life or freedom would be threatened in the future, 8 C.F.R. § 1208.16(b)(1)(i). There is no merit to Tan's claim that the Board failed fully to consider the evidence that he proffered. Unlike in the case he cites in his Rule 28 (j) letter, Fed. R. App. Pro. 28(j), Indradjaja v. Holder, 737 F.3d 212 (2d Cir. 2013), there is no indication here that the Board completely discounted or disparaged the Winters affidavit. Although the Board did not itself mention Dr. Winters' affidavit, it cited page 13 of the IJ's Oral Decision three times; on page 13 of the Oral Decision the IJ discussed Dr. Winters' affidavit and explained why less weight had been given to it. That sufficiently indicates to us that the Board was aware of the Winters affidavit, particularly in view of the fact that Tan devoted over twenty pages of his brief to discussing it, A.R. 19-42.

Relying heavily on Dr. Winters' opinion, Tan contends that he is nevertheless able to demonstrate a clear probability of future persecution upon returning to Indonesia, even without the benefit of the presumption. We disagree. Dr. Winters observed that there has been no "massive upsurge of violence against the ethnic Chinese since 1998." A.R. 234. In addition, there is no evidence that Tan experienced any problems rising to the level of persecution between 1995 when he last was harmed and 2003 when he departed Indonesia, and he testified that his three siblings and mother continue to reside in Indonesia, and that none of them have been harmed or threatened.

In sum, on this record, the agency properly concluded that Tan neither demonstrated a clear probability that he would be singled out individually for persecution upon his return to Indonesia, nor established the existence of a systemic, pervasive or organized pattern or practice of persecution of ethnic Chinese Christians in Indonesia.

For the foregoing reasons, we will deny the petition for review.